## POLLEYS & LLOYD *v.* BRINSON.

1. The evidence authorized the verdict.
2. A ground for new trial that the court erred in striking a plea said to be attached to the motion, cannot be ruled upon where no plea is attached to the motion in the record as sent to this court, and no order striking any plea appears.

March 1, 1890.

Verdict.  Pleadings.  Practice.  Before Judge BOWER.  Decatur superior court.  May term, 1889.

Brinson sued Polleys & Lloyd. His evidence was as follows: In May, 1882, Polleys made a contract with him to buy land, return it for taxes and keep trespassers

v 84-33

off it.  He said there was a company of them and they proposed to buy a hundred thousand acres of land. Was to give plaintiff $5.00 a lot for buying, and $1.25 a lot to see that the taxes were returned and keep off trespassers.  Plaintiff went on under that contract, and in July afterwards Polleys came back and George Lloyd came with him.  Plaintiff rode over the country with them and looked at the land, and Lloyd told him that Polleys had told him (Lloyd) about the agreement made with plaintiff and that it was all right.  The arrangement with Polleys was to last twenty years.  They paid plaintiff's commissions in 1883, $87.50, which was $1.25 for return of taxes and keeping the trespassers off. Plaintiff performed the service on the same agreement for 1884; no other agreement was made.  The firm was composed of Polleys and the two Lloyds.  George Lloyd told plaintiff that plaintiff could look to him for the money, and when he wanted the money, could just draw on him.  R. T. Lloyd came down in 1883, and remained until June or July of 1884.  He told plaintiff that he understood the agreement; and he must have understood it because he ordered plaintiff to go and look after the lands, and plaintiff gave in the lands.  He gave instructions for 1884.  Plaintiff did perform service in 1884 for which he has not been paid.  He entered lands upon the tax books at the price Lloyd told him to enter them and watched after them.  All the defendants live in Wisconsin.  Lloyd did not instruct him to give in the land in 1884, but instructed him not to do it.  Plaintiff bought all the lands under the same contract, part of the deeds being made to Polleys & Lloyd and part to George L. Lloyd; and they were made according to instructions given plaintiff.  He was employed by Polleys and George L. Lloyd, and they instructed him how to make the deeds.  They did not tell him in 1883 that they did not want him to give in the lands any more.

In 1882, he told George the agreement he had made with Polleys; and George said that Polleys had told him what the contract was, and that he had told Bob Lloyd, and further said for plaintiff to go ahead and he would get his money. Plaintiff was paid for only one year, and was then entitled to only that much. He did not return the taxes after Lloyd had notified him not to do it. Did not know that Polleys and Lloyd were not partners in 1884. Was to give in the land not only of Polleys & Lloyd but of George Lloyd, all in the same contract. George Lloyd paid for all of the lands and authorized plaintiff to give in all of them for all the partners. Defendants were a firm to buy land. They told him so, and told him to take the latter part of the deeds in the name of George Lloyd, but that the lands were all for the firm ; and George Lloyd told him that he wanted the deeds taken to himself to protect himself, but that all the land was for the company and that they did not have any money. Plaintiff never received any money from anybody except George Lloyd, and knew that Polleys had only a third-interest in the land when he gave in the taxes in 1884 ; but he gave in all the lands for that year under the first contract, though he thinks the firm of Polleys & Lloyd dissolved before 1884 by decree by mutual consent. They were not dissolved at the time he gave in the property ; if they were, he did not know it. If they did any business together as a firm in 1884, he did not know it. In 1884 he did keep trespassers from several of the lots ; he did not remember exactly which. At the time he gave them in in 1884 he had been notified not to give them in, but was not notified not to look after trespassers until after he had given them in. In May, 1884, Lloyd got mad with him and told him that another person would return the lands ; and he did not return them any more, but did look after the trespassers after that,

and his services were worth $1.25 a lot. He collected money from a trespasser on one of the lots, he thinks in July, 1884. There was no special contract about the year ending in June or July, but he was paid in the spring at the time of giving in the lands. He did not charge anything for what he did after he was notified not to give in the land, but his charges are from May, 1883, to May, 1884, they having paid him only up to May, 1883, which was to cover the period from July, 1882, up to May, 1883; and Robert Lloyd, who paid him up to May, 1883, then told him to go on with the service commenced from May, 1883; after that time he bought no lands for them, but his services were as above stated. He did not go on every lot during the year but just looked after it, and if he found anybody trespassing and it was necessary to enter a suit, his duty was to notify Lloyd and his attorney. Could not say how much it was actually worth to look after the four or five lots that he found being trespassed upon. Did not make affidavit as agent when he returned the property, but is sworn before he receives commission as tax-receiver to receive no man's taxes at less than the real value. Nobody was sworn about giving in this property, but it was entered at its value. The mere putting of the return upon the books was not worth anything; plaintiff's main service was in travelling through the country and looking after the land. The return had not been made in 1884 when Robert Lloyd notified him not to return the lands, but plaintiff did return them afterwards. Only Lloyd paid plaintiff in 1883 and told him to go ahead and look after the land and keep the trespassers off; he did not say to what time plaintiff should look, but plaintiff did look after it until May, 1884. He did give in the taxes in 1883 when he was paid. At that time Lloyd did not give him any instructions about returning the lands any more. Plaintiff did not get

any notice of the dissolution of defendants before May, 1884, but heard that Davidson claimed the land from Polleys in 1883.

For the defendants there was testimony tending to show that the Lloyds, about May, 1884, employed O'Neal, an attorney, to look after their business, return the lands for taxes and keep off trespassers; and O'Neal called upon plaintiff and told him of his employment and that he (O'Neal) was going to give in the taxes, and plaintiff told him that Lloyd had notified him not to give them in but that he was going to do it; and when O'Neal went to give in the lands for taxes, he found that they had already been given in. O'Neal's recollection was that, soon after the litigation between the Lloyds and Polleys, the representative of Davidson, in 1883, pending a division, took charge of the land, and that there was a division made and the deeds were all drawn up and signed and sent on for Davidson to sign, the division being all agreed to and satisfactory, but Davidson did not want to make a warranty deed. Both the Lloyds testified that plaintiff's claim was not correct, and that there was no such contract with him as he claimed, either orally or in writing; that they made a settlement with him in 1883, because he had testified, when he was a witness in a suit between the Lloyds and Polleys in 1883, that he had a contract with the firm. It was the first that the Lloyds knew of it; and then George Lloyd instructed Robert Lloyd to pay plaintiff and discharge him and notify him not to return any more land nor to look after any trespassers. Plaintiff was paid in 1883 to save any trouble and expense, as he claimed that Polleys had employed him and as the Lloyds were having trouble with Polleys at that time. Polleys had sold his interest in the land before 1884, and plaintiff was not employed by the Lloyds in 1884 to do or transact any business for them. George

Lloyd told him in May, 1884, not to return the lands or look after them for 1884, as he was going to leave the business with O'Neal. Plaintiff is indebted to defendants $37.00, $15 being for money collected for timber sold and the balance being for timber he took off their lands. Plaintiff was not paid anything for returning taxes in 1883 ; he never claimed anything for it; and the way he came to make the return was, that he was assessor for that year, and Robert Lloyd told him to return the land as he had the numbers as he had been buying land for defendants.

The defendants also introduced a decree made July 12th, 1883, at the May term of Decatur superior court, in an equity suit of the Lloyds against W. H. Polleys and two other Polleys ; by which it was provided, among other things, that the lands mentioned in the bill as having been purchased by the Lloyds and W. H. Polleys, and to which deeds were taken in their names, be decreed to be their lands equally, held by them individually and for their individual use and not in trust for The Spring Creek Canal and Improvement Company.

The jury found for the plaintiff the amount sued for ; and the defendants moved for a new trial on the grounds stated in the decision. The motion was overruled, and exception was taken.

D. A. RUSSELL and M. O'NEAL, for plaintiffs in error.
DONALSON & HAWES, *contra.*

SIMMONS, Justice.

Brinson sued the defendants on an account, and recovered a judgment. The defendants moved for a new trial on the general grounds that the verdict was contrary to law and the evidence, and on the following special ground : 4th. Because the court erred in striking the defendants' plea, a copy of which is hereto attached, marked " Exhibit A," which movants pray may be taken as and made a part of this motion for a new

trial. The court overruled the motion, and the defendants excepted.

1. We think the evidence authorized the verdict. The jury believed Brinson in preference to the defendants, as they had the right to do, and his evidence was sufficient to warrant the finding.

2. The 4th ground complains that the court struck a certain plea, which plea is said to be attached to the motion. In the record sent here there is no plea attached to the motion; and upon a careful examination of the record we have been unable to find an order of the trial judge striking any plea of the defendants. As far as the record discloses, no plea was stricken. As we are unable to say whether any plea was stricken or not, and if so what that plea contained, we cannot notice this ground .                    *Judgment affirmed.*